al., and with the Court's permission, I'd like to reserve five minutes for rebuttal. You've already done that. Thank you so much. This case arises from a merger in 2000 between Berkshire Hathaway and Justin Industries. The parties specifically negotiated Section 5.7 of the merger agreement, which protected some of the benefits in Justin's preexisting ERISA plans. Relevant to this appeal, the merger agreement did three things. The first clause of Section 5.7 says that Berkshire agreed to honor the terms of Justin's preexisting benefit plans, and then there's a proviso. The first qualification is, provided that Berkshire or the subsidiary may amend the plans as provided in the plan language or according to law. And then there's proviso to the proviso. And that's where the plan goes on to say, further provided that notwithstanding the foregoing proviso, which reserves our right to amend, Berkshire makes three promises. Berkshire will not cause the company to reduce any employee benefits for a period of one year. Berkshire will not cause the subsidiary to reduce any benefit accruals, and Berkshire will not cause the subsidiary to reduce any employer contribution. Now, after the merger, Berkshire Hathaway did exactly that. It caused the subsidiary, Acme, to reduce benefit accruals and reduce employer contributions. The plaintiffs in this case sued one fiduciary and a person who was a fiduciary and a participant, and then two additional participants sued to try and correct this problem. The Court dismissed the complaint for failure to state a claim, and then that brings us here today. Plaintiffs argue that this was reversible error because the district judge erroneously elevated form over substance. I'd like to break this down into two issues I'd like to focus on today. First, the district court failed to apply ordinary principles of contract law, and secondly, the court failed to follow this Court's precedents set forth in Halliburton. As to the first point, TACCET requires any court, including this Court and the district court, to interpret plan language using ordinary principles of contract law. And here, the district court missed two very important, and we would argue dispositive, principles of ordinary contract law. First, the notwithstanding language. This is plain English. It limits the foregoing proviso, notwithstanding the foregoing proviso. So to put that into better English, the merger agreement says, we recognize that Berkshire and the subsidiary, at that time Justin, later changed to ACME, has the right to amend the plan. Notwithstanding that, Berkshire makes three promises, and I talked about those promises earlier. Now, this is, under contract law, this is the clearest possible statement of intent. It's like saying, I know I have the right to wear any color shirt I want, but notwithstanding that right, I will not wear a green shirt or a yellow shirt. How long is that promise in effect? The green shirt, yellow shirt promise? We would argue that promise lasts for the duration of the plan. And that's exactly what happened in... Could ACME have terminated the plan altogether? I'm sorry, Your Honor. Could ACME have terminated the plan altogether? Yes, Your Honor, they could have terminated the plan. ERISA provides the plans can be terminated, and there are statutory requirements for that. You need to give notice to the participants, you need to give notice to the Department of Labor, you need to make sure that there's enough funding in place so that vested benefits are not taken away. But if you go through the right procedure, a plan can be terminated. Did Berkshire cause ACME to terminate the plan? Could Berkshire cause ACME to terminate the plan? That's what you're arguing today. That's what you argued five minutes ago. That's what you argued five minutes ago. That Berkshire did cause them to terminate the plan? Well, Berkshire caused them to reduce benefits. So the two promises they made, we won't reduce benefit accruals and we won't reduce employer contributions, those are the two promises that Berkshire broke. Now, there's not a promise in there that says Berkshire will not cause ACME to terminate the plan. And so, arguably, I think Berkshire could have caused ACME to terminate the plan had it chosen to do so. But your complaint is a request that ACME be enjoined from making these changes. That's different than what you're arguing today. Your Honor, that is a ... let me see if I can clarify that. In the complaint, there are allegations that ACME is presently completely controlled by Berkshire Hathaway. And so that calls into question an issue of fact as to whether ACME could act independently. Now, if the evidence shows that ACME cannot act independently, then any action that ACME takes would, in effect, be Berkshire Hathaway causing them to do something. But that's an issue of fact that is ... it's alleged in the complaint, but it was not resolved by the district court and it's not before this court today. If the evidence were to show that ACME could act independently, then ... then that's a different question of facts that would arise as to whether Berkshire could or did force ACME to do anything. But again, that's a factual question that, right now, all we have is the bare allegations of the complaint. There's no evidence in the record as to whether ACME is or is not controlled by Berkshire Hathaway. Does that answer your question? Not really because of the way your pleadings are set up, but go ahead. Okay. Let me follow up on that. In your pleadings, you say that Berkshire did control ACME. And if I accept that as true, then it seems like it would be an impossibility for ACME to act on its own to amend the plan, right? So, when you're talking about form over function, one argument would be because Berkshire controls everything, that this is, in effect, asking for a vested benefit. I understand your question. So why doesn't it fit under Tackett instead of Halliburton? Actually, the facts of this case are a good illustration of that. Back in 2006, Berkshire Hathaway started going after ACME, saying, we want you to reduce benefits. We want you to freeze the vesting. We want you to do all this. And ACME resisted. ACME's management resisted. ACME's, the benefits committee that administered the two plans, they resisted. And they kept going back to Berkshire, saying, no, we don't think that's right. We don't want to do that. It's not good for our employees. We don't want to do that. And that pressure continued. That debate continued from 2006 up to 2012 and even up to 2014. And then, finally, in 2014, Berkshire Hathaway offered an ultimatum. You do what we say, or we're going to sell the company. So Berkshire basically put a gun to their head at that point and exerted the control that they maybe had in theory earlier. They had it in fact in 2014 when they forced, I will use the word forced, and that's what's alleged in the complaint, forced ACME to make the change that Berkshire wanted. So, again, that's, if you look at that series of events, was ACME controlled by Berkshire prior to 2014? I think there will be evidence on both sides of that. But, again, that was not decided by the district court. I don't think . . . And this is the last time I'll ask this, but if ACME is incapable of acting without Berkshire, then a construction that says Berkshire can't cause it is, in effect, granting a vested benefit for a term that's not been defined. And, therefore, the district court's reasoning was it's a reasonable time. Okay. I think there are two parts to that question, two parts in my answer, Your Honor. First, I think there is a factual question as to the control, and we talked about that. The second one is, just because ACME is or is not controlled by Berkshire Hathaway is not the same thing as having a permanent benefit or a vested right. And, again, Halliburton addresses this explicitly. In the Halliburton case, if I may digress a little bit, because the facts are so important here, that was a corporate merger, just as in this case, that included the amendment of the existing ERISA plans. There was a clause, there were two clauses in the Halliburton case, Section 7.09G, Roman I, that basically said, and I'll paraphrase here, Halliburton shall maintain a particular medical plan. So that's the first promise in the Halliburton merger agreement. Right after that, there's a second promise in another clause. 7.09H said that Halliburton shall provide employee benefits for three years that are substantially similar to all of Halliburton's other employees. So there's two promises here. First, all benefits are guaranteed for a period of three years to be substantially similar with everybody else. And after that, Halliburton promised to maintain the Dresser medical plan. And that was an unlimited promise stemming from the merger agreement, because that's what was negotiated as part of the merger agreement. Now, of course, we argue that that's analogous to this case. There was a promise that was time-bounded. Berkshire Hathaway promised not to reduce any benefits for a period of one year. That's analogous to Halliburton's three-year promise. And then Berkshire Hathaway promised not to cause a subsidiary to reduce two specific ERISA benefits. And that is an ongoing promise that arises from the negotiations in the merger agreement. Now, in the Halliburton case, defendants made the same argument that Berkshire Hathaway is making today. Wait a minute. That's a promise of vested rights. That's a permanent benefit. You can't do that. And the Fifth Circuit, this Court, said, no, you misunderstand. A contractual promise not to take a right away is not a vested benefit. It's not a permanent benefit. The — I mean, vesting, again, has a very particular meaning in ERISA. It's fully addressed in the briefs. And a permanent benefit, likewise, it has a very discrete definition in ERISA. And the Halliburton language, and we would argue the language here, is not a permanent benefit. It's not a promise of a vested right. It is a — if I may quote Halliburton's footnote 11, the amendment does not give rise to vested rights, but merely limits the way in which Halliburton can amend or terminate the retiree program. And that is an ongoing obligation that is not bounded by time. The — and Halliburton also talked about, you know, well, implicitly talked about how long this is going to last. Halliburton says, if a plan sponsor cedes its right to make a plan amendment, it will be bound by that contract. And Halliburton doesn't say it will be bound by that contract until it feels like changing its mind. A contract is a contract. A promise is a promise. And if it's not bounded by time, then I guess that leads to the Court's reasonable time question that derives from Tackett. And if I may switch to that topic, there are three — oh, I'm sorry, four reasons that the reasonable time — reading the phrase reasonable time into this merger agreement is not appropriate here. First, you only read reasonable time into a contract if it's ambiguous. If you say, you know, I will sell you my house for $10, you know, okay, maybe we've made that contract, does that last forever or does that last for a reasonable time? If you look at the circumstances of that promise, a court — there's a missing term the court can read in reasonable time. Here, the language is not ambiguous. The notwithstanding clause is perfectly clear. It is not time-limited, and it doesn't say notwithstanding the foregoing proviso unless I change my mind. It says notwithstanding the foregoing proviso. That is an absolute statement. Secondly, the language in this case invokes the idea of inclusio, unius, et cetera. I don't speak Latin. But here, the parties did — there were three promises that Berkshire made. One was time-bounded. We won't change any benefits for one year. The other two promises were not time-bounded in terms of reducing benefit accruals and reducing employer contributions. And in Halliburton, the court had exactly these circumstances and say, this is convincing evidence to us. The parties knew how to draft a contract clause that included a time limitation. And the fact that they didn't do so as to this protected benefit tells us that there's no implicit time limitation. Your time limitation is up, but you've saved some time for rebuttal. Very well. Thank you, Your Honors. Mr. Shelley. Good afternoon and may it please the court. The complaint in this case sought to require an employer, Acme, and its parent, Berkshire, perpetually to provide benefits under two different ERISA plans. The law has been clear in this circuit for at least two decades that in order to have a lifetime promise of benefits, the contract must be clear and express on that point. Here, the complaint presented no plausible basis for assuming that the contract, the merger agreement, had issued clearly and expressly provided lifetime benefits and as a result, the complaint failed as a matter of pleading and the district court correctly dismissed it. I'd like to begin with the point that this is a permanent benefits case to the suggestion that the panel made earlier. If the court looks directly at the prayer for relief, there's no question that the allegation or the request is for a never-ending injunction requiring both Acme and Berkshire to provide benefits under both plans going into the future. There's no time limit on it and as a result, this is a permanent benefits case under which Acme would be prevented from, if you agree with the allegations of the complaint or assume the allegations of the complaint, it is one where Acme would be prevented from modifying, Berkshire would be prevented from modifying, Acme would be prevented from terminating, Berkshire would be prevented from terminating. And that's why it's not like Halliburton where the court said it wasn't a permanent benefit case but instead is closer to M&G Polymers versus Tackett. What if we accept half of your premise and agree with you that to the extent they alleged Acme could never amend the plan, it would be lifetime benefits. But since Acme could independently amend the plan, the only without time limit piece of it is as to Berkshire. Berkshire will not cause Acme to do that. And that's not necessarily lifetime benefits, is it? But it's the allegations of the complaint and what they want. The claim is for lifetime benefits. I agree entirely that the contract doesn't at all create lifetime benefits, whether respect to Berkshire or with respect to Acme. But the issue would be whether the plaintiffs are seeking lifetime benefits. You're talking about the prayer for relief. And I agree with you. They very directly say that Acme should be enjoined. But shouldn't the court look at the factual environments of the complaint? And I'm thinking of the Supreme Court's recent opinion in Johnson versus Shelby, Mississippi, that it's not, even in the Chwamblee context, it's not the legal conclusions that the plaintiffs draw from their complaint. It's the factual environments and whether they state a plausible claim. Well, I think if you just then if you begin with the beginning of the complaint and stop at the prayer for relief, I think the allegations are the same. They lead to the prayer for relief. I thought the beginning of their complaint was very consistent with the arguments they're making now, that they're concerned about Berkshire being allowed to cause Acme to make a change. And, in fact, that's what the contract, the agreement, addresses. But you can't argue in the complaint and allege in the complaint, not the prayer for relief, but in the complaint's allegations itself, that Berkshire has complete control. Those are the terms. That's the term in the background allegations. Berkshire has complete control over Acme. And even in their brief, footnote 13 of their brief, admits they're not ready to say differently. They admit in footnote 13 that Berkshire likely, even now likely, has complete control over Acme. So even pushing aside the prayer for relief, the allegations in the complaint, and that's what have to govern the legal analysis, are that Berkshire runs the show in all respects. That's the allegation. And as a result, a statement here now that Acme had an independent right to terminate the plan is of no consequence because the allegation in the complaint is that Acme didn't exist separate from Berkshire. As a matter of contract construction, though, you start with the language of the contract, right? And so to the extent that you're relying on an allegation in the complaint that Berkshire controlled Acme, wouldn't that be extrinsic to the contract itself? I don't think the contract addresses who controls who. It's just simply a merger agreement whereby Berkshire is. . . Right, but I'm saying if I'm following your Tackett argument, and I think I understand it, Tackett is saying that it has to be clear and express language, which is a matter of contract construction. Ginsburg said, well, that's just one step. Then if it's ambiguous, you have to look at extrinsic evidence. And I'm asking you, aren't you relying on extrinsic evidence when you're making the argument that plaintiffs believe Berkshire controlled Acme? I'm relying on the complaint. I agree with you that that's not something stated in the contract itself. But if the court wants to look just at the contract, there is a . . . the provisos 2 and 3 are silent as to their duration. So looking at those two, on the face of the contract, they can only exist for a reasonable amount of time, as the district court said. That's not extrinsic evidence. That's a principle of contract law. I'm not sure if I answered the question, but I think if we want to just turn to the actual merger agreement, we think we win on the face of the merger agreement, because under Tackett, under the majority opinion, I'd like to then get to Justice Ginsburg's concurrence, but under the majority opinion, the court says there are traditional rules of contract interpretation, ordinary contract principles, that should govern. And these are three that the court, Justice Thomas, in the majority opinion specifically says. Traditional rules of contractual interpretation require a clear manifestation of intent before conferring a benefit or obligation. Clear manifestation. Another principle, the traditional principle is that courts should not construe ambiguous writings to create lifetime promises. That's a negative in the sense of ambiguous writings cannot create lifetime promises, which means the positive of that must mean to get a lifetime promise, you need clear language. And that's where Justice Ginsburg, her concurrence, doesn't follow. Because if the majority is saying the traditional principle is that courts should not construe ambiguous writings to create lifetime promises, it's impossible then to say the majority opinion doesn't stand for the provision that you need clear language in order to create a lifetime promise. And in fact, if you look at the, if you compare even the way the Sixth Circuit thereafter looked at M&G polymers, they put on one side the majority's statements and the other side the concurrence's statements and they're exactly opposite. But is a promise not to require ACME to do something one way or the other the same as a promise of lifetime benefits if in fact it's up to ACME when ACME could independently decide to amend the plan? Sure. So there are two, I think, contract points there. One is the conferral of a benefit in itself requires clear and express language, and the Supreme Court said that as well in M&G polymers. Well, this was a clear third-party beneficiary conferral. Two companies were merging and the acquirer was promising to the being acquired company for the benefit of the employees that we won't cause you, because of this merger, to amend the plan to change these two benefits. And that's not... Is that the same as saying lifetime benefits when whether or not there were benefits was totally up to ACME? So it can be... Just under contract construction principles. So if you were to accept the new theory that this case of the plaintiffs, that this case doesn't really affect ACME at all, then it seems to me that it wouldn't... It gets away from the benefits issue and becomes, I think, as you're stating, Judge Owen, a contract, just a contract provision, but it's still a lifetime promise. In essence, it's not a lifetime promise of benefits, but it's a lifetime promise. In other words, it's a promise in Provisos 2 and 3 that Berkshire won't interfere, and it's silent as to the duration. And M&G Polymer says it's not just a benefits promise that needs to be clear and expressed, but any lifetime promise. You can't make a lifetime promise that's ambiguous, and particularly true in the ERISA setting, because an employer would never set up... would really never set up an ERISA plan if the prospect was that simply by setting it up, it could readily be read to create in perpetuity a plan that couldn't be changed. So the idea of having clear and expressed language just for any kind of promise associated with a plan, not just a benefit creation. Is it your position that that rule of construction that requires clear and expressed language trumps other rules of construction in this context? Trump, excuse me. Other rules of construction in this context. Yes, it's our... it's our... it's our position that, in light of cases like Spasic and Wise, actually, a 1993 case of this court, it is an ERISA principle of construction, with respect to benefits, at least, that you need a clear and expressed statement. And then M&G Polymers comes into play and says that's true with respect to benefits, and it's also true with respect to lifetime promises of any kind. So that's the principle. Whether it's trumping another principle, I don't know. But I think what the Supreme Court said was the principle as to a lifetime promise, not just associated with benefits, but a lifetime promise generally, is what governs. So it doesn't matter if Berkshire says I will not cause Acme to make any alterations in the percentages or any other issues addressed in the merger. That doesn't really matter if Acme is free to do it on their own. Correct. If Acme were free to do it on its own, it could have done exactly... For instance, it could have done exactly what it did here. The case would only be against Berkshire. But that's not the way the case is played. Assuming we agree with you that they have not stated any claim against Acme, and they can't because of the agreement, the only claim that they could state would be against Berkshire. You're saying that a promise that Berkshire not interfere in order to be construed as consistent for the life of the merger agreement, there's got to be some time limit or explicit expression that it's... Yes, yes. So assuming that new reading of the fact allegations, that there's nothing in here about Acme, Acme can exist independently... We agree there's something in there. Let's say we agree that they failed to state a claim against Acme. Correct. Their only claim is against Berkshire. I mean, it seems like to me every sentence of the ERISA agreement would have to say, this provision only lasts for a reasonable period of time or 5 years or 18 months. I mean, every statement in an ERISA deal, ERISA plan would have to have some time limit on it or you run into this rule. Well, if it's silent, if it's silent, that's the key. If it's silent, it exists only for a reasonable amount of time. And particularly if it's in a provision associated with benefits, which this is. So in Proviso 1, you have an interesting proviso, and that is that benefits won't be changed for a 12-month period. That's forward-looking. It says for 12 months, that's how it should be written if you want to have... in order to explicitly state the time limit. But 2 and 3, then, say nothing about the time limit. And, in fact, in M&G Polymers, the court criticized Yardman, the Sixth Circuit case, where the Sixth Circuit did exactly something like the plaintiffs ask here, and that is they said there should be lifetime retirement benefits because in some other provision of the contract, there was a statement that showed when certain benefits would end. And that wasn't in the life... and that wasn't in the provision associated with the lifetime retirement benefits. And the Sixth Circuit, therefore, read that duration to be forever. And instead, the Supreme Court said, no, you can't make that inference. Just because there's a limit in one part of the contract doesn't mean the lack of a limit means forever. Because it's silent. The Supreme Court didn't rule that as a matter of law, did they? They remanded. Well, they remanded it because the court noted at the end that they were a court of final review, not first review. And I don't think the Supreme Court in that particular case wanted to set forth the legal principles for the lower courts then to apply. And, in fact, it's now back at the district court. And the Sixth Circuit even said, well, we might not even apply M&G Polymers because the law in effect at the time of the facts and issue was what we stated in Yard Man. And I think if the Sixth Circuit does that, it's going to end up with the Supreme Court not being very happy with that particular case. But I do go back to the point that the silence as to the duration in Provisos 2 and 3 means that they can only exist for a reasonable amount of time. That's what M&G Polymer says. Even if the proviso right before had a time limit. And, in fact... What about Halliburton? Then we run into Halliburton from our side. Well, Halliburton is subject to the same limitation. Even if you want to look at this case as not a permanent benefits case but one more like Halliburton, Halliburton doesn't get into the reasonable time period because it says it's not a permanent benefit case, but it doesn't discuss a reasonable time limit for the promise in Halliburton, and that's because it was only a four- or five-year period that was an issue. Here you have a 14-year period, and you have the subsequent decision in M&G Polymers which specifically says silence on a promise equals only reasonable time periods. So Halliburton said what it said at the time it said it. And the facts aren't the same in the sense that a reasonable time period in that particular case was whatever, five years, in a case here where you have 14 years. And to the extent that the agreement mentions time periods, it does so in very short limits, 12 months, for instance, in the Proviso No. 1. The idea that you're looking at... you're concerned about... you know, you'll only limit yourself for 12 months, but then suddenly allow something else to go on forever doesn't make any sense. So we think the district court... there are really two theories to this case. The district court... the dismissal of the case. The district court's theory was that the provisions, even if you accept sort of the way they... the substance of them as forward-looking provisions, which we don't agree with, that they would nonetheless be subject to the reasonable time period. And as I stated, I don't think there's any allegation in the complaint whatsoever that 14 years is an unreasonable time period or is an ending point for this. Our other theory was that... and the district court didn't get to this, but we do go into this in our briefs... I don't want to hear that, but before you do, I want to ask about the last point you mentioned. The district court, and I agree with the way you have interpreted what he did in terms of the reasonable time issue, and he looked at the complaint to see whether there were sufficient allegations. He said there weren't. But why should, in light of that,  as opposed to without prejudice or without granting leave to amend? Well, that's because they never moved to amend. The only... It's in their... not only is it in their brief where they ask for leave to amend, but under the precedent of this court, if there's a new argument raised in response to a motion to dismiss, as you say they did, the court should construe that as a motion to amend. Well, I think this court's precedent in a case that really was incited in the briefs, but I did notify opposing counsel that I might reference it today. There's a case, Willard v. Humana Health, 336 F. 3rd, 375, and the jump site is at 387. The court specifically there says a bare one-liner at the end of an opposition to a motion to dismiss is not sufficient to preserve a motion to amend, the right to amend. And instead what should happen is that when the court went another way thereafter, you should have moved... you should have moved for reconsideration and then followed the local rule, moved to amend, tell the district court what you would want to add to the complaint, attach the amendment, showing new allegations, and because that didn't occur in the Willard case, the court said the district court didn't abuse his discretion in not allowing an amendment. And that's what the issue here is. In dismissing with prejudice, did the district court abuse its discretion? And it's not an abuse of discretion when no motion was filed, but a simple one-liner was in the opposition to the dismissal, and there was no effort to move for reconsideration thereafter, and no statement anywhere all the way along of what would be added to the complaint as the local rule required. But even more importantly, it would be futile to do so. There's been no statement here of even the allegations that would be added to the complaint to make it a good one at this point. The only broad statement that's made is somehow the... the pension plan, not the 401k plan, but the pension plan was so overfunded at the start that it must have been intended to go on forever so that overfunding could be used for continual, continual accruals of benefits. That's a naked assertion in the sense that there's no factual substance to the point... there's no factual substance in the allegations as to how overfunded it supposedly was, and it also doesn't address, well, then how can the 401k plan be subject to the same time limit when it has no overfunding associated with it at all? But reasonableness, I mean, is typically a question of fact, is it not? But they need a clear and express statement. They need a clear and express statement that this was intended to go on and on and on. And they just don't have that. Even the allegation... an allegation in an amended complaint to the effect of... to the effect of... overfunding, the Amgen case by the Supreme Court would suggest that's not enough. Amgen was a case just decided by the Supreme Court where the Supreme Court summarily reversed the Ninth Circuit for accepting some inferences, saying, well, on the one hand, you can make this inference, on the other hand, you can make this inference, and the Supreme Court summarily reversed that in an erisic context, saying, that is not the plausibility standard that needs to be met. There has to be facts in the complaint that show why a particular inference can be made and is plausible in the circumstances. And I don't think anything... even putting aside the sort of procedural infirmity of now raising this amendment issue up here when the judge didn't abuse his discretion at all in dealing with it the way he did, the substance of what they say they would add is very thin right now and doesn't get them, I think, a better claim, ultimately. The last issue... I see I just have just a minute. I wanted to address this deference issue which has come up and somehow that the fiduciaries here made a decision, but I do want to point out that the question here is whether there's a plausible argument... it's plausible that the contract clearly and expressly created permanent benefits or a lifetime promise. And the court in the Evans case cited in the briefs specifically noted that whether a contract's clear on a point is an issue for the court, not for a fiduciary of any kind. And that's what we say the issue is here. And the Halliburton case somewhat says the same thing in the sense that it doesn't at all defer to any issues that were going on in front of the fiduciaries. And in this case, it's not even clear what the fiduciaries were holding because as we noted in the record at page 437, it's pretty clear the fiduciaries didn't want a lawsuit to be brought here and in fact indicated they didn't agree with the position that one of the fiduciaries, Ms. Hunter, who was a plaintiff in the case, was pushing in this case. So there's no deference to be afforded here. There was no claim for benefits that was ever filed by anybody. It's the only discretionary situation that would exist and there wasn't any such claim. So we would ask that the court affirm the district court. Thank you, Mr. Shelley. Mr. Coakley, you have some rebuttal time. Thank you, Judge Clement. I'm going to tick through some of the issues that Mr. Shelley raised and of course I'll entertain any questions. Mr. Shelley started by talking about our prayer for relief and like that's the entire universe. Well, under Civil Rule 54C the prayer does not define the case, does not limit the case. Every final judgment shall grant relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in the party's pleadings. And here it's a motion to dismiss. It's not even a matter of crafting judgment in favor of the plaintiffs. Here the factual allegations in the complaint are broad enough to sustain the theories asserted. In terms of Tackett, the Court and of course the Court can read Tackett for its own self and decide what it means, but the basic rule of Tackett is you don't put your thumb on the scale in favor of either party. You use good old fashioned rules of contract interpretation to figure out the intent of the parties. And there's no magic language that's required. That's what Tackett itself says in the Ginsburg concurrence. That's what the Sixth Circuit explicitly said in its remand order and the recent Gallo decision again from the Sixth Circuit said it doesn't the clear and express language theory just doesn't apply because that would be putting a thumb on the scale against benefits and you don't do that. That's not what Tackett requires. Now in terms of whether a lifetime promise has been established here, we argue that you need to look at the context of this. The context in Tackett was a collective bargaining agreement that had a three year duration subject to renewal and the Court said well, again I'm paraphrasing here, but the basic thrust of the Court's analysis was if you've got a three year contract and someone's going to argue that that three year contract extends perpetual benefits, you've got to show me some language that says that and I'm not going to impose a reasonable time limitation because it's a three year contract. You can't assume that it goes on forever. The facts here are very different. This is a merger agreement. It's not something that's going to be renegotiated every three years. This is a situation like the Halliburton case where it's a one time event. All the chips were on the table. Berkshire Hathaway was negotiating with Justin to define future benefits for the plan and it was now or never, all or nothing. They cut a deal and Berkshire Hathaway promised at that time that notwithstanding any other rights it might have to cause ACME to do something to reduce plan benefits, it was not going to reduce those benefits for benefit accruals and it was not going to reduce those for employer contributions. Now just as the merger agreement lasts in perpetuity, like a corporation lasts in perpetuity, the promises in the merger agreement don't expire after a certain amount of time. A deal is a deal. And again, that's one of the teachings of Halliburton. Halliburton says, and in fact SpaceX says the same thing in an earlier case. They say if the corporation sets aside its right to make an amendment in benefits, that is an enforceable agreement and neither Halliburton nor SpaceX put a time limit on that because a promise is a promise, a deal is a deal. Judge Owen asked some questions of Mr. Shelley concerning whether a claim would be valid against ACME. And I'd like to address that very briefly because I believe Judge Owen is referring to the Settler Doctrine. And again, that's the idea that it's not a breach of fiduciary duty for a plan sponsor to amend a plan because that's a business decision, it's not a fiduciary decision. Now, in Halliburton we had exactly the same situation. And the court enforced the promise not to take away benefits even though that might have been considered a settler function because the settler promised it wasn't going to do that and it was bound by that promise. So the promise of an employer is enforceable if they make an explicit promise and if they do so, the fact that they're also a settler can't or else we would have seen that result in Halliburton and that just didn't happen. And my time has expired. I have more to say, but thank you very much for your time and attention.